**UNITED STATES COURT OF APPEALS**     April 9, 2008

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

EUGENE W. NICHOLSON,

    Defendant-Appellant.

No. 07-3334
(D.C. No. 6:07-CR-10028-MLB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

---

On June 4, 2007, defendant Eugene W. Nicholson pleaded guilty to a

two-count Information charging him with one count of possession with intent to

distribute five grams or more of cocaine base and one count of forfeiture of

$2,017.54 in United States currency.  The written plea agreement between

Nicholson and the United States provides that Nicholson "knowingly and

---

[*]     This panel has determined unanimously that oral argument would not
materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2);
10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral
argument.  This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence." Plea Agrmt. at 5, ¶ 9. More specifically, he "knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. . . . In other words, [he] waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upward from the applicable sentencing guideline range determined by the court." *Id.* at 5-6, ¶ 9.

The district court imposed a sentence at the bottom of the advisory guideline range. Despite the waiver of appellate rights in the plea agreement, Nicholson then filed a notice of appeal. His docketing statement reflects that he desires to appeal his sentence because he believes it is too harsh. Seeking to enforce the waiver of appellate rights contained in the plea agreement, the United States has moved to dismiss this appeal pursuant to *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam).

In determining whether to dismiss an appeal based on a waiver of appellate rights, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325.

> To prove that enforcement of an appellate waiver would result
> in a miscarriage of justice, a defendant must establish at least one of
> four circumstances: (1) reliance by the court on an impermissible

-2-

factor such as race in the imposition of the sentence; (2) ineffective assistance of counsel in connection with the negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful and seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005).

In his response to the government's motion, Nicholson does not dispute that his appeal falls within the scope of the appeal waiver, but he does contend both that he did not knowingly and voluntarily waive his right to appeal and that enforcing the waiver would result in a miscarriage of justice. First, he argues that he did not knowingly and voluntarily waive his right to appeal because the plea agreement failed to include certain information about the calculation of his sentence that was critical to a meeting of the minds.

Nicholson admitted in the plea agreement to possessing with intent to distribute a total of 14.24 grams of cocaine base and to possessing $2,017.54, which was derived from or was intended to be used to facilitate the commission of his possession with intent to distribute the drugs. To calculate the base offense level for Count 1, the presentence report converted the $2,017.54 of currency into a cocaine base equivalent and then added that to the 14.24 grams of cocaine base to arrive at a total amount of cocaine base.[1]

---

[1]    Application note 12 to U.S.S.G. § 2D1.1 provides in pertinent part as follows:

Types and quantities of drugs not specified in the count of conviction
(continued...)

Nicholson argues that neither the plea agreement nor the court's plea colloquy informed him of the possibility that the currency would be converted into drugs and he would be sentenced on that hypothetical quantity of drugs rather than the quantity to which he admitted in the plea agreement. He contends there was no meeting of the minds about what quantity of drugs he was pleading guilty to nor about how the currency would be converted into a drug equivalency, so his appeal waiver was neither knowing nor voluntary.

Nicholson's arguments are neither factually nor legally supportable. First, there is no question about the amount of drugs to which he pleaded guilty. The plea agreement states that on August 4, 2006 police officers found him in possession of approximately 6.88 grams of cocaine base and on December 23, 2006, they found him in possession of approximately 7.36 grams of cocaine base and 5.77 grams of marijuana. Plea Agrmt. at 2, ¶ 2. Nicholson pleaded guilty to possessing with the intent to distribute the cocaine base found in his possession on August 4 and December 23, *id.*, which totals 14.24 grams.

---

[1](...continued)

> may be considered in determining the offense level. See § 1B1.3(a)(2)(Relevant Conduct). Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance . . . .

Nicholson also admitted to possessing 5.77 grams of marijuana, but because that amount was so minimal, it did not affect the base offense level determination.

What Nicholson is essentially arguing is that when he pleaded guilty, he did not know how his sentence would be calculated, and he did not agree to the method used, so his waiver of his right to an appeal could not have been knowing and voluntary. But he did not have to know how his sentence would be calculated in order to agree to waive his right to appeal it.

The plea agreement recites the parties' desire that the United States Sentencing Guidelines (U.S.S.G.) would apply, it acknowledges that the sentence to be imposed will be determined solely by the district court, and it acknowledges that uncharged related criminal activity as well as conduct charged in any dismissed counts may be considered as relevant conduct in calculating the sentence under the guidelines. The plea agreement also recites Nicholson's understanding that if the court accepts his plea but imposes a sentence with which Nicholson does not agree, Nicholson cannot withdraw his plea.

At the plea colloquy the court informed Nicholson that it did not know what sentence it would impose and that it could not know what sentence it would impose until it saw the presentence report. The court also advised Nicholson that although his counsel may have discussed his views of likely sentencing with Nicholson, his counsel could not possibly know what sentence Nicholson would receive either. The court made it clear to Nicholson before it accepted his plea that Nicholson was pleading guilty without knowing how long a sentence he

would receive, except that it would be somewhere between the statutory minimum of five years and the statutory maximum of forty years.

The district court questioned Nicholson thoroughly about his understanding of the plea agreement, including the factual basis for the plea stated in the agreement, how his sentence would be determined, and the appeal waiver. With regard to the latter, the court explained:

> Paragraph 9 sets forth your agreement that you will not appeal from your conviction and sentence, nor will you come back at a later date and ask me to reopen your case under Section 2255 or Rule 60(b). Basically the effect of Paragraph 9 is that you will not ask any court anywhere at any time for any reason to review what happens to you in this court in terms of your convictions and sentence. Do you understand that?

Tr. of Plea Hrg. at 10-11. Nicholson responded, "Yes, Your Honor." *Id.* at 11. Just before Nicholson entered his guilty plea, the court again quizzed Nicholson about his understanding of the rights he was giving up by pleading guilty, stating, in part, "And for all practical purposes, you're giving up your right to appeal. Do you understand the rights you're giving up?" *Id.* at 15. Nicholson again responded affirmatively.

The plea agreement recites that Nicholson "is entering into the agreement and is pleading guilty because [he] is guilty and is doing so freely and voluntarily." Plea Agrmt. at 8, ¶ 15. And after Nicholson entered his guilty plea on the record, the district court found that he had made his plea "freely, voluntarily, and because he is guilty as charged; not out of ignorance, fear,

-6-

inadvertence or coercion; and with a full understanding of the consequences." Tr. of Plea Hrg. at 15.

As we explained in *Hahn*, a defendant need not "know with specificity the result he forfeits before his waiver is valid." 359 F.3d at 1327. "The law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances–even though the defendant may not know the *specific detailed* consequences of invoking it." *Id.* (brackets and quotation omitted). *Id.* Thus Nicholson did not need to know exactly how his sentence would be calculated in order to waive his right to appeal any aspect of his sentence.

When determining whether a waiver of appellate rights was knowing and voluntary, we look predominantly at two factors: "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and whether there was "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. Both factors clearly establish that Nicholson's waiver of his right to appeal was knowing and voluntary.

And Nicholson's conduct following the entry of his plea further supports our determination. After the presentence report was issued, Nicholson's counsel reviewed the report with him and then sought and received a delay in sentencing so that he could conduct research and possibly file objections to the presentence

report.  The sentencing was delayed from August to October and then again to November 2007.  Nicholson's counsel did not, however, file any objections to the presence report.[2]

At the sentencing hearing, the district court questioned Nicholson directly about the presence report.  Nicholson said that he had reviewed the report and had discussed it with his attorney and that there was nothing in the report that he wished to change or correct.  Nicholson also said that he was satisfied with the way his attorney had handled his case.  At the request of both Nicholson's counsel and the government, the district court imposed a sentence at the bottom of the guideline range in accordance with the base offense level and criminal history calculations set forth in the presence report.

Our review of the plea agreement and Nicholson's statements in open court establishes that his waiver of appellate rights was both knowing and voluntary.

Nicholson also argues that enforcement of the waiver would result in a miscarriage of justice.  He contends that his sentence is unconstitutional because he was sentenced for possession of an amount of drugs to which he did not admit and of which he was not found guilty by a jury, in violation of *United States v. Booker*, 543 U.S. 220 (2005).  Further, he contends that it offends the notion of

---

[2]     The final delay in sentencing gave Nicholson the benefit of the November 2007 amendments to the guidelines that lowered the offense levels for various cocaine base offenses.  These amendments had the effect of lowering the bottom of Nicholson's advisory guideline range by 24 months and lowering the top of the range by 30 months.

judicial fairness to sentence a defendant for possession of an amount of drugs that was never proven by the government. He notes that the price per gram that the government used to calculate the cocaine base equivalency of the currency in his possession may not bear any relation to the true price per gram that Nicholson charged his customers and, therefore, may not reflect the true weight of the drugs he sold to acquire the currency.

Nicholson's arguments do not support a miscarriage-of-justice exception to enforcement of his appeal waiver. They concern only the lawfulness of his sentence and do not challenge the lawfulness of the appeal waiver itself. "The relevant question, however, is not whether [defendant's] sentence is unlawful . . ., but whether . . . his appeal waiver itself [is] unenforceable." *Porter*, 405 F.3d at 1144 (holding alleged *Booker* error does not make appeal waiver unenforceable). To hold that alleged errors in calculating Nicholson's sentence make his appeal waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive. Nicholson has not shown that enforcement of the waiver would seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

The sentence imposed by the district court complied with the terms of the plea agreement and with the understanding of the plea that Nicholson expressed at the plea hearing. Nicholson has not demonstrated that his appeal falls outside the scope of the appeal waiver, that he did not knowingly and voluntarily agree to the

appeal waiver, or that it would be a miscarriage of justice to enforce the waiver.

Accordingly, the United States' motion to enforce the waiver of appellate rights is

GRANTED and the appeal is DISMISSED.

ENTERED FOR THE COURT
PER CURIAM

07-3334 *U.S. v. Nicholson*

J. **O'BRIEN**, concurring.


A notice of appeal was filed almost before the ink was dry on Nicholson's plea agreement waiving his right to appeal. In spite of his disregard of the agreement he signed (and told the district judge he understood), he expects to preserve the government's concession — dropping one count of carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1), which, upon conviction, carries a mandatory consecutive sentence of at least five years. The practice is becoming all too familiar.

Nicholson claims there was no "meeting of the minds" in the plea agreement because he did not know how much crack cocaine would be attributed to him.[1] From that dubious premise he argues: 1) he did not knowingly and intelligently enter into the agreement and, in striking hyperbole, 2) enforcing the waiver would result in a miscarriage of justice. His arguments are contrary to our precedents (and the reasoning of the Supreme Court) and thus unworthy of serious attention; frivolous. *See Anders v. California* , 386 U.S. 738, 744 (1967) (legal points not arguable on the merits are frivolous); *United States v. Heavrin*, 330 F.3d 723, 729 (6th Cir. 2003) (defining a "frivolous position" as "one lacking a

---

[1] The point has taken on dramatic, albeit late blooming, importance in Nicholson's papers. No objection was raised in the district court to the attribution rules or the method of computation in the Presentence Investigation Report.

reasonable legal basis"); *see also Coleman v. Comm'r*, 791 F.2d 68, 71 (7th Cir. 1986) ("A petition to the Tax Court, or a tax return, is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. This is a standard applied under Fed. R. Civ. P. 11 for sanctions in civil litigation, and it is the standard we have used for the award of fees under 28 U.S.C. § 1927 and the award of damages under Fed. R. App. P. 38.").

The methodology for attributing drug amounts is set out in the guidelines (which Nicholson and the government jointly asked the court to apply). In *United States v. Hahn*, we rejected the argument that "a defendant can never knowingly and voluntarily waive his appellate rights because he cannot possibly know in advance what errors a district court might make in the process of arriving at an appropriate sentence." 359 F.3d 1315, 1326 (10th Cir. 2004) (en banc). We held this analysis "improperly focus[es] on the prospective result of the sentencing proceeding rather than the right relinquished." *Id.* A defendant need "not know the specific detailed consequences of invoking [a waiver]" in order for it to be knowing and intelligent. *United States v. Ruiz*, 536 U.S. 622, 629 (2002); *see also United States v. Montano*, 472 F.3d 1202, 1205 (10th Cir.), *cert. denied*, 128 S.Ct. 224 (2007) (expressly declining to adopt a rule that an appeal waiver is unenforceable when defendant did not know what the sentencing range would be at the time she entered into the plea agreement). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been

-2-

accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action." *Brady v. United States*, 397 U.S. 742, 757 (1970).

The government is expected to scrupulously abide a plea agreement. *See Santobello v. N.Y.*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *United States v. Scott*, 469 F.3d 1335, 1339 (10th Cir. 2006) (same). Yet, Nicholson chooses to selectively ignore parts of the agreement and hopes to do so with impunity. Is it because he thinks there can be, or more accurately, will be, no attendant consequences? Not necessarily; the fairness coin has two sides. Perhaps the government should seek to set aside the plea agreement and proceed with the case as originally charged.